CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
September 16, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Megan Poff
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **BRIAN KEITH CAVITT,** | ) | |
| **Plaintiff,** | ) | **Case No. 7:26-cv-00012** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **WARDEN ISRAEL HAMILTON, et al.,** | ) | **Senior United States District Judge** |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Brian Keith Cavitt, a state inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against Keen Mountain Correctional Center (KMCC) Warden Israel Hamilton, Unit Manager W. Cole, Sergeant A. T. Hess, and Virginia Department of Corrections (VDOC) Regional Administrator Thomas Meyer. The case is presently before the court on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by Hamilton, Cole, and Meyer. ECF No. 19. For the reasons set forth below, the motion to dismiss is **GRANTED**, and the claims against Hess are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### I. Background

Cavitt is confined in the custody of the VDOC pursuant to an Interstate Corrections Compact agreement between the Commonwealths of Massachusetts and Virginia. Compl., ECF No. 1, at 4. He is incarcerated at KMCC in Oakwood, Virginia, where the events giving rise to this action occurred. Id. at 1.

Cavitt alleges that he was moved to the Restrictive Housing Unit (RHU) in C-building at KMCC in January 2025 after being attacked by inmates in B-building. Id. at 2. Cavitt remained in the RHU for two days before his property was brought to him. Id.

Cavitt alleges that Sergeant Hess inventoried the property taken from his cell on January 8, 2025. Id. Although Hess was supposed to deliver Cavitt's property to the RHU, Hess failed to do so. Id. at 3. Cavitt alleges that Unit Manager Cole then allowed his property, including legal work, books, pictures, personal papers, $500 worth of electronics, religious items, food, and hygiene items, to sit in a hallway in B-building for two days. Id. During that time, unknown inmates "pilfer[ed] his belongings." Id.

When Cavitt's property was returned to him, he received an inventory sheet listing his legal work, personal papers, pictures, book, and television. Id. at 2. Upon being released from the RHU on January 29, 2025, Cavitt received another inventory sheet listing all of his personal property. Id. However, all of his personal property was not returned to him. Id. at 4. The missing property included electronic items, food, hygiene products, and a deck of tarot cards that Cavitt used to practice his Wiccan religion. Id.

Cavitt communicated with Cole several times regarding the missing property, and Cole told him that he would "look into it." Id. at 3. When Cavitt filed a grievance regarding the missing property, Cole responded that Cavitt had not shown proper proof of ownership or purchase of the items alleged to be missing. Id. at 3. Although Cavitt provided property inventory sheets, the grievance was found to be "indeterminable." Id. Cavitt alleges that Warden Hamilton "simply repeated and rubber stamped Cole's original assessment" and "ignored" the property inventory sheets submitted with the grievance. Id.

Cavitt appealed the decision to Regional Administrator Meyer. Id. at 4. Cavitt alleges that Meyer "claimed that [Cavitt] failed to provide proof of purchase in a timely manner." Id. Cavitt asserts that all of the defendants had access to the property inventory sheets themselves and that they "conspired to block [him] from being reimbursed for the property." Id.

Cavitt alleges that he is recognized as a Wiccan by the VDOC and the Massachusetts Department of Corrections. Id. He further alleges that the loss of his tarot cards has prevented him from practicing his religious beliefs, "causing an imbalance of [his] equilibrium, muddying of [his] aura, painful back spasms, and intestinal issues." Id. at 5.

Cavitt claims that each defendant is responsible for the loss of his property and that all of the defendants denied, or conspired to deny, his right to practice his religious beliefs. Id. He seeks to recover monetary damages from the defendants. Id. at 2.

## II. Standard of Review

Hamilton, Cole, and Meyer, the three defendants who have waived service of process, have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Pursuant to this provision, a party may seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Similarly, under the Prison Litigation Reform Act, the court may dismiss any portion of a complaint filed by a prisoner against a government official that "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

To survive dismissal for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Id. While "detailed factual allegations" are not required, a complaint must contain more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal quotation marks and brackets omitted).

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." Wilcox v. Brown, 877 F.3d 161, 166–67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint pro se, the court must construe pleading requirements liberally." Id. "But liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." Bing v. Brivo Sys., LLC, 959 F.3d 605, 618 (4th Cir. 2020). "[P]ro se pleadings, like counseled ones, must contain more than labels and conclusions," Seabrook v. Driscoll, 148 F.4th 264, 269–70 (4th Cir. 2025) (internal quotation marks omitted), and set forth "enough facts to state a claim for relief that is plausible on its face," Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

## III. Discussion

Cavitt filed suit against the defendants under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. The statute "is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." Safar v. Tingle, 859 F.3d 241,

245 (4th Cir. 2017). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

**A. Claims Against Defendants in Their Official Capacities**

The complaint does not indicate whether the defendants are sued in their official and/or individual capacities. To the extent the defendants are sued in their official capacities, Cavitt has no viable claim for damages under § 1983. It is well settled that the Eleventh Amendment "bars suit against state officials in their official capacity for damages under 42 U.S.C. § 1983." Lawson v. Gault, 828 F.3d 239, 278 (4th Cir. 2016). Additionally, whereas § 1983 "permits suit against 'every person' who deprives an individual of his or her rights under color of state law, neither States nor state officials acting in their official capacities constitute 'persons' within the meaning of the statute when sued for monetary relief." Fauconier v. Clarke, 966 F.3d 265, 279–80 (4th Cir. 2020). Accordingly, any claim for damages under § 1983 against the defendants in their official capacities must be dismissed.

**B. Claims Against Defendants in Their Individual Capacities**

In order to state a claim against a defendant in their individual or personal capacity under § 1983, a plaintiff "must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation marks and alterations omitted). "Liability is thus determined person by person: A plaintiff must show 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" King v. Riley, 76 F.4th 259, 269 (4th

Cir. 2023) (quoting Iqbal, 556 U.S. at 676). Cavitt has not satisfied this requirement with respect to any of the named defendants.

First, Cavitt has not plausibly alleged that any defendant deprived him of his property without due process in violation of the Fourteenth Amendment. Although due process generally requires an opportunity to be heard prior to the deprivation of a property interest, it is well established that a pre-deprivation hearing is not required in all circumstances. See Zinermon v. Burch, 494 U.S. 113, 127–28 (1990). For instance, the Supreme Court has held that "a state actor's unauthorized deprivation of an inmate's [property] 'does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.'" Hawes v. Stephens, 964 F.3d 412, 418 (5th Cir. 2020) (quoting Hudson v. Palmer, 468 U.S. 517, 533 (1984)). Under the Virginia Tort Claims Act (VTCA), the Commonwealth of Virginia is liable for claims for damages resulting from "damage to or loss of property . . . caused by the negligent or wrongful act or omission of any [state] employee while acting within the scope of his employment." Va. Code § 8.01-195.3. The United States Court of Appeals for the Fourth Circuit has held that the VTCA and Virginia tort law provide adequate post-deprivation remedies for torts committed by state employees. See Wadhams v. Procunier, 772 F.2d 75, 78 (4th Cir. 1985). Because adequate remedies are available under state law for the unauthorized deprivation of personal property by a state prison official, Cavitt has no viable due process claim under § 1983 stemming from the loss of his personal property.

Cavitt has also failed to plausibly allege that any of the defendants deprived him of his First Amendment right to freely exercise his religious beliefs. "To make a Free Exercise claim,

a prisoner must first show, as a threshold matter, that a prison practice or regulation violates his Free Exercise rights before showing that the prison's policies are not reasonably related to legitimate penological interests." Firewalker-Fields v. Lee, 58 F.4th 104, 114 (4th Cir. 2023) (internal quotation marks omitted). In particular, "an inmate, as a threshold matter, must demonstrate: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." Greenhill v. Clarke, 944 F.3d 243, 253 (4th Cir. 2019) (quoting Carter v. Fleming, 879 F.3d 132, 139 (4th Cir. 2018)). He must also allege a "conscious or intentional interference with his free exercise rights to state a valid claim under § 1983." Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir. 2006). Merely "negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause." Id.

Here, even assuming that Cavitt holds a sincere religious belief, he has not identified any "prison practice or policy" that places a substantial burden on his ability to practice his religion. Greenhill, 944 F.3d at 253. Instead, he alleges that Unit Manager Cole left his property in the hallway of a building where other inmates were able to pilfer through it. He does not allege that Cole knew that the property included tarot cards used for religious purposes, or that Cole or any other defendant intentionally deprived him of his tarot cards or forbade him from possessing them. At most, Cavitt describes an isolated act of negligence, which does not state a valid claim under the Free Exercise Clause of the First Amendment. Id.; see also Peterson v. Lampert, 499 F. App'x 782, 785 (10th Cir. 2012) (affirming the dismissal of a free exercise claim brought by an inmate who lost a box of property containing tarot cards and

other religious items following a prison transfer, and noting that "an isolated act of negligence would not violate an inmate's First Amendment right to free exercise of religion").

Finally, Cavitt has failed to plausibly allege that the defendants conspired to violate his federal constitutional rights. To establish a civil conspiracy under § 1983, a plaintiff must allege facts indicating that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). Here, Cavitt's conclusory references to a conspiracy do not suffice to state a claim upon which relief may be granted. See Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 325 (2d Cir. 2002) (explaining that "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed") (internal quotation marks omitted). Additionally, in the absence of an underlying constitutional violation, a § 1983 conspiracy claim "necessarily fail[s]." Saunders v. Thies, 38 F.4th 701, 715 (8th Cir. 2022).

## IV. Conclusion

For the reasons stated, the court concludes that Cavitt has failed to state a plausible claim for relief under § 1983 against any of the named defendants. Accordingly, the motion to dismiss filed by Defendants Hamilton, Cole, and Meyer, ECF No. 19, is **GRANTED**, and the claims against Defendant Hess are **DISMISSED** without prejudice pursuant to 28 U.S.C.

§ 1915A(b)(1). All other motions, including Cavitt's motion for appointment of counsel, ECF No. 31, are **DENIED** as moot.* An appropriate order will be entered.

Entered: September 16, 2026

Michael F. Urbanski
U.S. District Judge
2026.09.16
11:12:00 -04'00'

Michael F. Urbanski
Senior United States District Judge

* A litigant in a civil case does not have a constitutional right to counsel, and the court cannot require an attorney to represent a civil litigant. See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa, 490 U.S. 296, 309 (1989). Although courts have been advised to appoint counsel "if it is apparent that a pro se litigant has a colorable claim but lacks the capacity to present it," Riddick v. Barber, 109 F.4th 639, 651 (4th Cir. 2024) (internal quotation marks and alterations omitted), no colorable claim has been presented in this case for the reasons set forth above. Thus, even if Cavitt's motion for appointment of counsel were not moot, it would be denied.